IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WELLS FARGO BANK, NAT'L ASS'N, AS TR. FOR THE BENEFIT OF REGISTERED HOLDERS OF J.P. MORGAN CHASE COM. MORTG. SEC. CORP., MULTIFAMILY MORTG. PASS-THROUGH CERTIFICATES, SERIES 2017-K724, | : : : : : : : : | |
| Plaintiff, | : : | Civ. No. 24-2051 |
| v. | : : : | |
| MM-FCDC PARTNERS, L.P., | : : : | |
| Defendant. | : | |

Diamond, J.                                                                                              October 15, 2024

MEMORANDUM OPINION

In this foreclosure diversity action, Plaintiff Wells Fargo Bank moves for dismissal of Defendant MM-FCDC Partners' breach-of-contract Counterclaim. (Doc. No. 14.) The Bank argues that, the Erie doctrine notwithstanding, a *state procedural rule* bars the Counterclaim. Because the Federal Rules of Civil Procedure apply here, I must reject this argument. I agree with the Bank's alternative contention, however, that the Counterclaim is not plausible.

I.   BACKGROUND

Wells Fargo has invoked the Court's diversity jurisdiction. 28 U.S.C. § 1332; (Doc. No. 1 at 2-3.)

A.   The Mortgage

This case concerns a commercial mortgage on real property in North Philadelphia: "The Braverman Building." (Doc. No. 11 at 9, ¶ 1.) On October 7, 2016, Berkadia Commercial Mortgage LLC—the original noteholder—issued a $3,601,000 commercial mortgage loan to MM.

1

(Doc. No. 1 ¶ 14; Doc. No. 11 at 9, ¶ 6.)  Berkadia and MM also executed a "Multifamily Loan and Security Agreement." (Doc. No. 1 Ex A pts. 1-2; Doc. No. 11 at 9-10, ¶ 7.)  As collateral, MM granted Berkadia a security interest in the Property.  (See Doc. No. 1 Ex. C at 3 of 24.)  The Mortgage was recorded on October 20, 2016.  (Doc. No. 1 ¶ 18.)  Berkadia assigned the Note, Loan Agreement, and Mortgage to Federal Home Loan Mortgage Corporation in October 2016, which in January 2017 assigned it to the Noteholder, a REMIC trust, with Wells Fargo as trustee.  (Id. ¶¶ 2-4, 19-22, Exs. D-E.)  In administering the Loan Agreement, Wells Fargo had "sole and absolute discretion." (Id. Ex. A pt. 2 § 11.09.)

Wells Fargo alleges that when the Note matured on November 1, 2023, MM did not pay the resulting indebtedness.  (Id. ¶¶ 24-25, 28.)  The Bank also alleges that MM's failure to pay by November 1 constitutes an "Event of Default," permitting the Noteholder to foreclose on the Property.  (Id. ¶¶ 25, 31, Ex. A pt. 1 § 9.01.)

### B. Foreclosure

On May 14, 2024, Wells Fargo initiated the instant foreclosure action.  (Id. at 1.)  MM answered and brought a Counterclaim comprised of largely overlapping causes of action: (1) breach of contract and breach of good faith and fair dealing; (2) declaratory judgment; and (3) promissory estoppel and detrimental reliance.  (Doc. No. 11 at 15-18.)  Wells Fargo has moved to dismiss the Counterclaim in its entirety.  (Doc. No. 14.)

MM alleges that in September 2023, it sought a 120-day Loan extension to refinance with a new lender.  (Doc. No. 11 at 10, ¶¶ 12-13.)  It appears, however, that for some six months, MM made no payments to the Bank which took no action.  (See id. at 10-11.)  As alleged, Midland Loan Services, which Wells Fargo employed to service the Loan, was "amenable" to the refinance. (Id. at 10, ¶ 14).  On the Bank's behalf, Midland inspected the Property on January 16, 2024, and

2

sought related financial information. (Doc. No. 1 Ex. A pt. 1 §§ 11.09-11.10; Doc. No. 11 at 10, ¶¶ 14-15.) On March 6, 2024, MM provided Midland with an executed term sheet that anticipated refinancing with a new lender "on or about" May 8, 2024. (Doc. No. 11 at 10, ¶ 18.) MM "believed at this time that it had been granted the requested extension." (Id. at 10-11, ¶¶ 18-19.)

MM was "surprised" by the foreclosure action, and could not pay the arrearage, purportedly because Midland demanded a $100,000 "fee" in connection with "any refinance." (Id. at 11-12, ¶¶ 24-29.) On April 19, 2024, Wells Fargo's counsel sent MM a letter denying that any loan extension agreement had been reached. (Id. at 12, ¶ 30.) Counsel explained that Midland had not demanded a "fee," but sought the principal and interest on the Loan accruing from November 1, 2023, plus default interest and fees: $169,321.00. (Id. at 12, ¶ 31.)

## II. MOTION TO DISMISS

Wells Fargo argues that MM has failed to comply with the requirements of Pa. R. Civ. P. 1148, which the Bank believes I must apply in the unusual circumstances presented here. The Bank alternatively urges that because MM has not made out a plausible breach of contract, that claim and MM's related claims fail. I agree with the second contention.

## III. LEGAL STANDARDS

### A. Rule 12

In deciding a motion to dismiss, I must accept as true all factual allegations and make all reasonable inferences in the nonmovant's favor. Fed. R. Civ. P. 12(b)(6); In re Rockefeller Ctr. Props., Inc., 311 F.3d 198, 215 (3d Cir. 2002). I must apply the same standard when dismissal of a counterclaim is sought. See Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 826 (3d Cir. 2011). A pleading need not recite "detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007). The movant must show that the pleading party's allegations are insufficient to

3

"raise a right to relief above the speculative level." Bell Atl. Corp., 550 U.S. at 555; Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). "The inquiry is not whether [a party] will ultimately prevail in a trial on the merits, but whether [it] should be afforded an opportunity to offer evidence in support of [its] claims." See In re Rockefeller, 311 F.3d at 215. I may disregard any legal conclusions. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

**B.    Federal or State Law**

Under the Erie doctrine, a federal court sitting in diversity applies state substantive law and federal procedural law. Erie R.R. v. Tompkins, 304 U.S. 64 (1938); Collins v. Mary Kay, Inc., 874 F.3d 176, 181 (3d Cir. 2017). State procedural law may apply if the court deems it "substantive." See Knight v. Tape, Inc., 935 F.2d 617, 622 & n.4 (3d Cir. 1991) (Pa. R. Civ. P. 238 governing pre-judgment interest on damages was substantive for Erie purposes). Erie aims to discourage (1) forum shopping, and (2) "inequitable administration of the laws." Chamberlain v. Giampapa, 210 F.3d 154, 158-59 (3d Cir. 2000).

When otherwise applicable state and federal procedural rules directly conflict, the federal court should apply the federal rule. Id. at 159. If there is no "direct collision," the court should determine if applying the state rule accords with Erie. Id. Federal rules should be given their "plain meaning" and not be "construed narrowly" to avoid a direct collision. Id. Yet, "[f]ederal courts have interpreted the Federal Rules . . . with sensitivity to important state interests and regulatory policies." Id. (quoting Gasperini v. Ctr. for Humans., Inc., 518 U.S. 415, 427 n.7 (1996)).

IV.     DISCUSSION

   A.     Federal Rule 13(a) Applies Here.

The Parties correctly agree that in interpreting the Loan Documents, I must apply Pennsylvania substantive law.  (See Doc. No. 1 Ex. A pt. 2 § 11.02; Doc. No. 14 at 9-11; Doc No. 24 at 5-10.)  They disagree, however, as to whether I must also apply Fed. R. Civ. P. 13(a) or Pa. R. Civ. P. 1148.

Rule 13, which usually governs counterclaims in federal court, requires a party to assert any counterclaim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A).  The Rule is closely associated with claim preclusion: a party failing to bring a compulsory counterclaim at the first opportunity may be barred from bringing it later.  Transamerica Occidental Life Ins. Co. v. Aviation Off. of Am., Inc., 292 F.3d 384, 391 (3d Cir. 2002).  Moreover, when applying Rule 13(a), courts broadly interpret which claims "arise[] out of the transaction or occurrence." Ares Trading S.A. v. Dyax Corp., 114 F.4th 123 (3d Cir. 2024) ("This standard is satisfied '[w]here multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties.'" (quoting Great Lakes Rubber Corp. v. Herbert Cooper Co., 286 F.2d 631, 634 (3d Cir. 1961)).

Rule 1148 provides that "[a] defendant may plead a counterclaim which arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose." Pa. R. Civ. P. 1148.  Pennsylvania courts have held that under Rule 1148, in mortgage foreclosures, "only those counterclaims that are part of or incident to the creation of the mortgage itself" are permissible.  Chrysler First Bus. Credit Corp. v. Gourniak, 601 A.2d 338, 341 (Pa. Super. Ct. 1992) (citing 3 Goodrich-Amram 2d § 1148:1)).

5

If Rule 1148 applies, MM's Counterclaim would be barred because it is not "part of or incident to the creation of the mortgage" at issue. See id. Wells Fargo thus makes the counterintuitive argument that, in this diversity action, I should apply *state procedural law* (Rule 1148) and dismiss MM's Counterclaim.

In the Bank's view, under Erie, I must apply Rule 1148, because it affects the Parties' substantive rights. (Doc. No. 14 at 9-10.) ("Mortgage foreclosure actions in Pennsylvania are governed by Pennsylvania Rules 1141 through 1150"; "[t]hese rules are considered substantive for Erie doctrine purposes.") Yet, many, if not all, procedural rules can affect substantive rights. See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 407 (2010) ("The test is not whether the Rule affects a litigant's substantive rights; most procedural rules do."). In regulating the manner by which counterclaims may be brought in foreclosure actions, Rule 1148 is plainly setting out a procedural requirement. Villot v. Varner, 373 F.3d 327, 332 (3d Cir. 2004) ("Substantive law 'creates, defines, and regulates rights and duties of parties.' In contrast, procedural law 'prescribes method[s] of enforcing rights or obtaining redress for their invasion.'" (quoting Black's Law Dictionary 1203, 1429 (6th ed. 1990)); see also Hanna v. Plumer, 380 U.S. 460, 472-73 (1965) ("One of the shaping purposes of the Federal Rules is to bring about uniformity in the federal courts by getting away from local rules. This is especially true of matters which relate to the administration of legal proceedings . . . .");. As I have discussed, however, when the applicable federal and state procedural rules directly conflict, I must apply the federal rule. Chamberlain, 210 F.3d at 159.

Although Wells Fargo does not address the issue, it is nonetheless plain that Rules 13(a) and 1148 directly conflict: Rule 13(a) compels a defendant to raise all counterclaims "logically related" to a plaintiff's causes of action. See Great Lakes Rubber Corp., 286 F.2d at 634. In

6

foreclosure actions, Pennsylvania Rule 1148 bars counterclaims not incident to the mortgage's creation.  Chrysler First Bus. Credit Corp., 601 A.2d at 341; see also Kline v. Ward, No. 07-cv-00819, 2007 U.S. Dist. LEXIS 60194, at *7 (M.D. Pa. Aug. 16, 2007) ("[T]he issue of a direct conflict is not in question: state law forbids counterclaims and the Federal Rule compels them.").  I must thus apply Rule 13(a), which allows MM's Counterclaim because it arises from the same transaction or occurrence as Wells Fargo's claims.

In these circumstances, I will not dismiss MM's Counterclaim.

### B. MM's Counterclaim Fails to State a Claim upon Which Relief Can Be Granted.

Once again, the Counterclaim comprises: (1) breach of contract and breach of covenant of good faith and fair dealing; (2) declaratory judgment; and (3) promissory estoppel.  (Doc. No. 11 at 15-19.)  All are closely related.

#### 1. Breach of Contract

MM alleges that Wells Fargo breached its contract with MM to extend the Loan's maturity date.  (Id. at 15-16).  Under Pennsylvania law, the elements of breach of contract are: (1) the existence of a contract, including its essential terms; (2) a breach of the contract; and (3) resulting damages.  Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C., 137 A.3d 1247, 1258 (Pa. 2016).  The facts MM allege do not make out the existence of a contract.

MM's pleading is not a model of clarity, mingling factual allegations and legal conclusions.  MM alleges that in September, 2023, it sought a 120-day extension of the Loan's November 1, 2023 maturity date.  (Doc. No. 11 at 10, ¶¶ 12-13.)  As alleged, Midland, acting at the Bank's behest, toured the "Braverman Building" on January 16, 2024, reviewed supporting financial documents, and was "amenable" to a refinance.  (Id. at 10, ¶¶ 14-17.)  It appears that Wells Fargo

7

took no adverse action for six months—from the requested extension in September, 2023 through March, 2024. (Id. at 10-11, ¶¶ 12-20.) On March 6, 2024, MM provided Midland with an executed term sheet anticipating refinance with another lender. (Id. at 10, ¶ 18.) "Weeks later," Midland advised MM that the Bank would be filing a foreclosure action. (Id. at 11, ¶ 20.) MM alleges that "[Midland] led [MM] to believe that the maturity date of the Loan had been extended through its words and actions." (Id. at 12, ¶ 36.) At the same time, MM alleges that the Bank "agreed to extend the maturity date of the Loan." (Id. at 12, ¶ 35.) It thus appears that MM has equated its belief that Midland or Wells Fargo had extended the Loan with an actual loan extension. Missing from MM's factual allegations is any actual grant, written or unwritten, from Wells Fargo of the sought-after extension. (See id. at 10-11.) Rather, given that MM sought only a 120-day extension, its submission of a term sheet some 140 days *after* the Loan had matured strongly suggests that the Parties had not yet come to an agreement. In these circumstances, MM's assertion that "Lender agreed to extend the maturity date of the loan" appears, at most, to be an unsupported mixed legal and factual conclusion. (Id. at 12, ¶ 35); see also Rockefeller Ctr. Props. Sec. Litig. v. Rockefeller, 311 F.3d 198, 216 (3d Cir. 2002) ("[C]ourts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint.").

Plainly, MM has failed plausibly to allege facts showing that Wells Fargo, in its sole discretion (as provided by the Mortgage), agreed to MM's extension request. (See Doc. No. 11 at 10-11; Doc. No. 1, Ex. A pt. 2 § 11.09.) Because MM has thus failed to make out the existence of a contract, its breach-of-contract claim necessarily fails.

### 2. Breach of Covenant of Good Faith and Fair Dealing

Apparently as part of its breach-of-contract claim, MM further alleges that Wells Fargo breached its duty of good faith and fair dealing by denying the Loan extension. (Doc. No. 11 at

15-16, ¶¶ 60-67.)  Under Pennsylvania law, however, there is no separate good faith cause of action arising from a lender-borrower relationship where the lender simply "enforce[es] its legal and contractual rights as a creditor."  Cable & Assocs. Ins. Agency v. Com. Nat'l Bank, 875 A.2d 361, 364 (Pa. Super. Ct. 2005); see also Creeger Brick & Bldg. Supply, Inc. v. Mid-State Bank & Tr. Co., 560 A.2d 151, 154 (Pa. Super. Ct. 1989) ("The duty of good faith imposed upon contracting parties does not compel a lender to surrender rights which it has been given by statute or by the terms of its contract.").  Because the Bank, as creditor, had a contractual right to exercise its discretion, and deny any extension, MM has not pled a plausible cause of action.

### 3. Declaratory Judgment

MM asks me to declare that the Parties "entered into a maturity extension agreement, that the maturity date of the Loan was extended and that Lender materially breached the maturity extension agreement, and the Loan Documents and otherwise engaged in unlawful and bad faith conduct." (Doc. No. 11 at 17, ¶ 71.)  MM thus simply restates its breach-of-contract claim, which I have ruled is not plausible.  (See id. at 15-17.)  Accordingly, the declaratory judgment claim is also implausible and will be dismissed.

### 4. Estoppel

MM asserts promissory estoppel/detrimental reliance based on the Bank's refusal to extend the Loan's maturity date.  See Matarazzo v. Millers Mut. Grp., Inc., 927 A.2d 689, 692 (Pa. Commw. Ct. 2007) ("Detrimental reliance is another name for promissory estoppel.").  The elements of promissory estoppel are: (1) the promisor made a promise that it should have reasonably expected would induce action or forbearance on the part of the promisee; (2) the promisee actually took the action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise.  V-Tech Servs. v. Street, 72 A.3d 270,

276 (Pa. Super. Ct. 2013). As I have discussed, MM fails to plead facts that make out the first element: the existence of any promise by Wells Fargo to extend the Loan's maturity date. (See Doc. No. 11 at 10-11.)

Moreover, because promissory estoppel enforces a promise made without consideration, the promise must be so clear that the interests of justice compel the providing of relief to the party that detrimentally relies on it. See Fedun v. Mike's Cafe, Inc., 204 A.2d 776, 782 (Pa. Super. Ct. 1964) ("[Promissory estoppel] is not to be loosely applied; if it were, any promise, regardless of the complete absence of consideration, would be enforceable."). As I have discussed, even construing the alleged facts in the light most favorable to MM, there is nothing to show—clearly or otherwise—that Wells Fargo or its loan servicer granted MM an extension. (See Doc. No. 11 at 10-11.) Accordingly, this claim, too, is not plausible and will be dismissed.

## V.     CONCLUSION

MM seeks to prosecute its breach of contract and related claims in the apparent absence of a contract. In these circumstances, I will dismiss MM's Counterclaim. Although Wells Fargo's apparent inaction from September, 2023 through April 19, 2024 does not make out an agreement to extend the Loan, it is sufficiently curious to allow MM the opportunity to replead and perhaps clarify this matter. Accordingly, I will dismiss without prejudice.

An appropriate Order follows.

**AND IT IS SO ORDERED,**

*/s/ Paul S. Diamond*
Paul S. Diamond, J.